592 So.2d 1223 (1992)
James Clyde LAMON, Appellant,
v.
Paula E. REWIS, Appellee.
No. 91-1457.
District Court of Appeal of Florida, First District.
January 28, 1992.
William J. Haley and Nancy Staff Slayden of Brannon, Brown, Haley, Robinson & Cole, P.A., Lake City, for appellant.
*1224 Mary Ann Shephard, Fort White, for appellee.
WOLF, Judge.
Lamon (husband) appeals from a final order which modifies a child custody order of a Georgia court. The husband asserts that the Florida trial court erred in finding that it has jurisdiction to modify the custody determination of the Georgia court. We agree that the Florida court lacked jurisdiction to modify the prior custody order where the husband still resided in Georgia.
The parties were divorced in Colquitt County, Georgia, in 1988. They voluntarily entered into a property and custody agreement which provided for the father, James Clyde Lamon, to have custody of all of the minor children. In April of 1989, Eli Lamon, the parties' son, by mutual agreement of his parents, came to Florida to live with his mother, Paula Rewis, the appellee in this case. Eli lived with his mother in Florida from April of 1989 until January 24, 1991, the date of the hearing below.
In February 1990, the child's mother filed, in Colquitt County, Georgia, a petition for modification of child custody, seeking to change the custody of Eli from his father to her. When the matter came on for hearing on October 12, 1990, in Georgia, however, the judge dismissed the petition for lack of prosecution when the mother failed to appear.
On the same date, Friday, October 12, 1990, the mother also filed an action in Columbia County, Florida, seeking custody of the child. At the hearing on that action, the father's motion to dismiss the action for lack of personal jurisdiction over the father was granted on December 5, 1990, with the provision that a petition for modification subsequently filed by the mother would be heard on January 24, 1991. Temporary custody of the child was given to the mother in the interim.
Prior to the January 24, 1991, hearing in Florida, the court in Colquitt County, Georgia, entered an order adjudicating the mother to be in contempt of court for violating the court's order, dated June 7, 1988, which originally granted physical custody to the father. The court specifically held that the Superior Court of Colquitt County, Georgia, had jurisdiction of the parties and of the subject matter, and held that the mother was in violation of the Uniform Child Custody Jurisdiction Act (UCCJA) by wrongfully withholding physical custody of the child from the father. The Georgia court ordered the mother to be incarcerated in the Colquitt County Jail until she returned the child to the father. On December 12, 1990, the county judge of Columbia County, Florida, issued a warrant for the mother's arrest due to the fact that she was a fugitive from justice from the state of Georgia.
At the January 24, 1991, hearing in Florida, the trial court entered an order finding that the circuit court of Columbia County, Florida, had jurisdiction over Eli Lamon as to all matters concerning his custody. The court also found it to be in the child's best interest to remain in the custody of his mother and listed a number of reasons why Florida was the state with the most significant connections with the child. That court's finding of jurisdiction is being challenged on appeal.
In Yurgel v. Yurgel, 572 So.2d 1327 (Fla. 1990), the supreme court addressed the jurisdiction of a court to modify a final custody order of the court of another state under the UCCJA.[1] The court found that "the primary purpose of the UCCJA is to create certainty by ensuring that jurisdiction over a specific custody dispute can be obtained only by a single state at a time"; therefore, there should be no uncertainty about jurisdiction in a case where a parent, a child, or a parent and child have left the *1225 initial state. Id. at 1330. The supreme court recognized that great deference should be given to the state which makes the initial custody determination since such deference furthers the two central objectives of the act:
1) Discouraging the shifting of children from one state to another as a way of forum shopping, and
2) preventing conflicts among jurisdictions once a state has entered a custody decree.
Yurgel, supra at 1331, citing Bodenheimer, Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction Under the UCCJA, 14 Fam.L.Q. 203, 214 (1981).
Only the court in the state where the initial custody order was entered should evaluate the contacts between the child and the states involved in determining whether the initial state should relinquish jurisdiction. Yurgel, supra at 1332. Petitions to modify a decree should be addressed to the court which rendered the original decree even if a second state has become the "home state" of a child. Hammil v. Bower, 487 So.2d 345 (Fla. 1st DCA 1986). A second state may only exercise jurisdiction where the court of continuing jurisdiction (court where original custody order was rendered) expressly determines that its exercise of jurisdiction is no longer appropriate or where virtually all contacts with the state of continuing jurisdiction have ceased. Yurgel, supra at 1332.
The Georgia court never relinquished jurisdiction of Eli Lamon. To the contrary, on November 17, 1990, the Georgia court specifically held that it did have proper jurisdiction over the parties and the subject matter. Furthermore, a finding of virtually no contact in Georgia is incompatible with the fact that the father continued to reside in Georgia. "Only when the child and all parties have moved away is the deference to another state's continued jurisdiction no longer required." Bodenheimer, 14 Fam.L.Q. at 215. See also Yurgel, supra at 1330. Any other rule of law would create confusion and promote conflict between the courts of various states concerning jurisdiction to modify child custody decrees.
The trial court's determination of jurisdiction based on an analysis of "significant contacts" is contrary to the law. The decision of the trial court is reversed.
WIGGINTON and ALLEN, JJ., concur.
NOTES
[1] Both Yurgel and this case may be distinguished from the case of Lee v. Meeks, 592 So.2d 282 (Fla. 1st DCA 1991), recently issued by this court. In Lee, 1) the remedy sought was habeas corpus; 2) the order which was being modified was a temporary custody order and not a final order; and 3) the jurisdiction of the court to enter the initial order was being questioned. None of these factors exist in Yurgel or in the instant case.